UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Corey Skelton, individually and as
Trustee for the next of kin of Decedent
Beth Michelle Skelton,

    Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 18-3344 (MJD/DTS)

Davidson Hotels LLC, Davidson Hotel
Company, d/b/a Radisson Hotel Bloomington
and Water Park of America, Reliance Standard
Life Insurance Company, and Marc. L. Messina,

    Defendants.

---

    Michael M. Bader and Jodell Galman, Bader Law Offices LLC, Counsel for Plaintiff.

    William D. Hittler, Nilan Johnson Lewis PA, Counsel for Defendant Reliance Standard Life Insurance Company.

---

    This matter is before the Court on Defendant Reliance Standard Life Insurance Company's ("Reliance") Motion for Summary Judgment [Doc. No. 163] and Plaintiff's Partial Motion for Summary Judgment on the ERISA claim. [Doc. No. 175]

**I.    Background**

1

Davidson Hotels LLC, Davidson Hotel Company, d/b/a Radisson Hotel Bloomington and Water Park of America ("Davidson") operated and managed the Radisson Hotel pursuant to a license agreement with Defendants Carlson, Radisson and WSI(I)-RWP, LLC.[1]  (Am. Comp. at ¶ 9.)  Plaintiff was married to the Decedent Beth Skelton ("Beth"), who was employed by Davidson as a corporate group sales manager at all time material to this action.  (Id. at ¶ 3.) Davidson also employed Defendant Marc Messina, who was the general manager of the hotel at all times material.  (Id. at ¶ 4.)

As an employee of Davidson, Beth participated in Davidson's ERISA welfare benefits plan ("Plan") which provided for dental, health, life, and long term disability benefits.  Reliance insured the life insurance portion of the Plan through a group policy.  (Id. at ¶ 48; Hittler Aff., Ex. 1.)  Davidson was the Plan's Administrator, and had the discretionary authority to interpret the Plan, determine eligibility for coverage and eligibility for claims.  (Second Bader Aff., Ex. 30.)

With respect to life insurance, the Plan provided basic life insurance in the amount of $100,000 for management employees and $2,000 for spouses at no cost

---

[1] These Defendants have been dismissed without prejudice.  (Doc. No. 32)

2

to the employee.  (Id., Ex. 1.)  The Plan also provided that employees could pay for supplemental term life insurance.  (Id.)  At the time of her hire, Beth was automatically enrolled in the basic life insurance and she waived supplemental term life insurance.  (Bader Aff., Ex. 2.)

In November 2013, Plaintiff regained custody of his minor son.  (Bader Aff., Ex. 3 (Plaintiff Aff. at ¶ 2).)  To ensure that her stepson was protected if anything happened to her or her husband, Beth enrolled in the maximum supplemental life insurance offered under the Plan; $238,000 for Beth and $50,000 for Plaintiff.  (Id.)   A benefits form dated January 2, 2014 confirms that Beth applied for this additional benefit.  (Bader Aff., Ex. 4.)  A Benefit Confirmation/Deduction Authorization form dated January 30, 2014 also shows that Beth requested the additional life insurance, and that the reason she was completing the form was stated as: "Regain custody of dependent child on 1/28/2014."  (Id., Ex. 5.)  Another form entitled Benefit Verification/Deduction Authorization shows that supplemental life insurance coverage was effective as of 1/01/2014 but does not list the amount of insurance or the cost of such insurance.  (Id., Ex. 6.)

The life insurance policy ("Policy") at issue provides that when an employee elects to purchase supplemental life insurance at the time of hire, proof of good health is not required and he/she would not have been required to complete an Evidence of Insurability ("EOI") form.  (Bader Aff., Ex. 1 (Benefits Enrollment Guide at 12).)  But if an employee applies for supplemental life insurance after thirty-one days of commencing employment, the employee has to submit an EOI form, and the insurer must approve the request before the insurance becomes effective.  (Id. ("**NOTE:**  Elect coverage when first offered or Evidence of Insurability (EOI) will apply later"); Hittler Aff., Ex. A (Policy at 4, "If an eligible Person pays a part of the premium, he/she must apply in writing for the insurance to go into effect.  He/she will become insured on the later of: . . . (3) the first of the month following the date we approve any required proof of good health.  We require proof of good health if a person applies: (a) after thirty-one (31) days from the date he/she first becomes eligible.")

When an employee seeks a change as to the amount of insurance due to a "life event change (such as marriage, birth or specific changes in employment status)" the Policy provides that "proof of good health will not be required

provided the insured applies within 31 days of such life event." (Bader Aff., Ex. 8.)

Plaintiff argues that the Policy does not define "life event" and that Reliance never made a determination of whether regaining custody of a minor step-son would constitute a "life event." Davidson's Director of Human Resources, Linda Shirber-Gagnon, recalls that Beth asked if changing custody of her step-son constituted a "Qualified Status Change" and Shirber-Gagnon replied that it did. (Pl. Ex. 12 (Schirber-Gagnon Aff. at ¶ 7, Ex. 2 at 5; Ex. 3C (which includes notation under "Reason for Completing Form" "Regain custody of dependent child on 1/28/2014").)

Reliance counters that the Policy does define "life event" as "marriage, birth or specific changes in employment status." (Bader Aff., Ex. 8 at 3.) Because Beth did not adopt Plaintiff's son, Reliance argues there was no life event that triggered this provision. In her supplemental affidavit, Schirber-Gagnon clarified that because Beth did not adopt Plaintiff's son, having the son move into the Skelton's home would not have been a "Qualifying Status Change." (Doc. No. 172 (Supp. Schirber-Gagnon Aff. ¶ 7).)

At some point, Beth obtained a document entitled "Important Team Member Instructions" concerning the need to complete an EOI regarding her application for supplemental life insurance.  (Bader Aff., Ex. 13.)  The form instructs that the EOI be fully completed and "[i]f there is required information missing from the form, Reliance Standard Life Insurance Company will return it to you for completion.  If you do not return the completed form you will not receive the additional Team Member or Spouse Supplemental Life Insurance coverage."  (Id.)  The form further provides the following:

> Should you be approved for Team Member or Spouse Supplemental Life Insurance coverage with Reliance Standard Life Insurance Company, your additional coverage will be effective the later of 1/1/2014 or the date your application is approved by the Medical Underwriting Department.  Until your application for Team Member or Spouse Supplemental Life Insurance coverage is approved by the Medical Underwriting Department, the amount of your Team Member or Spouse Supplemental Life Insurance coverage that is subject to evidence of insurability will not go into effect.  You will not be charged premiums for amounts subject to evidence of insurability until the approval is granted.

(Id.)

The form further instructs that the completed EOI should be returned directly to Reliance Standard Life Insurance Company no later than 1/21/2014.  (Id.)

Plaintiff testified that he recalls he and his wife going to the home of his business partner to fill out the EOI because his partner had a computer and a printer.  (Bader Aff., Ex. 3 (Plaintiff Aff. at ¶ 3).)  Beth told Plaintiff she was going to mail the form or drop it off at work.  (Id.)  Plaintiff is certain that she completed the form and would have mailed it or dropped it off at work.  (Bader Aff., Ex. 15 (Plaintiff Dep. at 18-25).)  Plaintiff does not recall seeing confirmation from Reliance or Davidson confirming receipt of the EOI or that it was not received.  (Id. at 25.)

Beth went on medical leave on February 24, 2014.  While on leave, Beth received short-term and long-term disability benefits but she was required to pay the premiums for her benefits.  In a letter dated March 4, 2014, Davidson informed her that she owed $821.97 for premiums for the period of February 2014 through March 2014, which amount included the premium for the supplemental term life insurance.  (Bader Aff., Ex. 18.)  Beth paid Davidson $821.97 for the February 2014 through March 2014 premiums.  (Id., Ex. 12 (Shirber-Gagnon Aff., Ex. 5).)  In a letter dated July 29, 2014, Davidson informed Beth that she was past due for the premiums covering the period May 24, 2014

through July 20, 2014.  (Second Bader Aff., Ex. 20 at 4.)  It thus appears the premiums were paid for the period February 2014 through May 24, 2014[2].

On March 15, 2015, Reliance sent Beth a letter indicating she may be eligible for a Waiver of Premium benefits with an enclosed form.  (Id., Ex. 21.)  Beth completed the form and returned it to Reliance.  (Id., Ex. 22.)  Pursuant to a document represented to be Reliance's case notes, the waiver was retroactively approved to March 1, 2014.  (Id., Ex. 23.)

On December 6, 2015, Beth committed suicide.  Thereafter, Plaintiff received a Proof of Loss Claim Statement from Reliance, which he completed and submitted.  (Id., Ex. 15 (Plaintiff Dep. at 35); Hittler Aff., Exs. J and K.)  The form provided the life benefit in force was for $100,000.  (Hittler Aff., Ex. J.)  Sometime after receiving the $100,000 death benefit, Plaintiff attempted to talk with someone at Reliance on numerous occasions to ask about the supplemental term life insurance but was unable to reach anyone.  (Bader Aff., Ex. 15 (Plaintiff Dep. at 35, 49-50).)   Plaintiff admitted he never submitted a written notice of claim to Reliance concerning the supplemental life insurance coverage.  (Id. at 39-40.)

---

[2] Plaintiff believes that his wife's parents may have paid the premiums for April and May 2014.

Plaintiff then began to contact Davidson. Thereafter, Davidson's broker, Susan Smith, contacted Reliance, who confirmed it had no record of supplemental life and no record of receiving an EOI from Beth. (Second Bader Aff., Ex. 25 (Email dated February 17, 2016 from Davidson Broker Susan Smith).)

By letter dated March 28, 2016, Davidson informed Plaintiff that because Reliance never received a completed EOI from Beth, Reliance had not approved Beth's application for such insurance benefits. (Id., Ex. 29.) In the letter, Davidson acknowledged that Beth had applied for supplemental life insurance coverage for herself and Plaintiff, but claimed the election was "pending" because Reliance did not receive the requested EOI form. (Id.) The letter then acknowledged that when Beth was on medical leave, Davidson had sent letters to Beth which reflected the amount of premiums owed, which incorrectly included premiums for the supplemental term life insurance. (Id.) "However, this premium should not have been requested until coverage was actually approved by Reliance Standard's Medical Underwriting Department." (Id.) Plaintiff was then refunded $133.12 "which reflects 13 Pay periods. 26 weeks"; the maximum amount that could have been billed for the allowed Leave of Absence time period. (Id.) This letter further noted that no premiums for

9

supplemental life coverage were ever deducted from Beth's paychecks while she was employed by Davidson.  (Id.)

## II. Motions for Summary Judgment

### A. Motion to Strike

Plaintiff moves to strike the affidavit of Margaret Simon, submitted in support of Reliance's motion for summary judgment.  Plaintiff asserts that Simon's affidavit was not disclosed until after discovery closed and that the affidavit is unsworn and not based on personal knowledge and is therefore inadmissible.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17 (1970) (unsworn statements not admissible at summary judgment stage).

Reliance offers no legal argument as to the admissibility of the Simon affidavit[3].  Because the Simon Affidavit is unsworn and not based on personal knowledge, the motion to strike will be granted.

### B. Breach of Fiduciary Duty

---

[3] Reliance did argue that Plaintiff misstated the holding of Van Loo v. Cajun Operating Co., 703 Fed. App'x. 388 (6th Cir. 2017), cited in support of the motion to strike, and points out that Reliance was granted dismissal in that case, even though it had also submitted an unsworn affidavit from Margaret Simon (the plaintiff had failed to timely move to strike the affidavit in that case, however).  Regardless, Reliance did not argue that the Simon affidavit was admissible in this case.

Plaintiff claims that Reliance breached its fiduciary duties by charging and collecting premiums for supplemental life insurance coverage for over six months on a policy it claims was never effective, without giving the Skeltons notice that an EOI form had not been received or that the supplemental life insurance they were paying for was not in effect.

Plaintiff asserts his claim for breach of fiduciary duty is addressed by the Court in the first instance. Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 427 (6th Cir. 2006). Reliance asserts that Plaintiff has not exhausted his administrative remedies as to this claim, therefore it should be dismissed.

### 1. Exhaustion of Administrative Remedies

Exhaustion of administrative or plan remedies is a prerequisite to filing suit. See Conley v. Pitney Bowes, 34 F.3d 714, 7166-717 (8th Cir. 1994) (requiring exhaustion when it was required by the particular plan involved). "Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." Chorosevic v. MetLife Choices, 600 F.3d 934, 941 (8th Cir. 2010) (quoting Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir. 1998)). Here, the Policy provides that a notice of claim must be filed within thirty-one days after a loss occurs. (Hittler

Aff. Ex. A (Policy at 11.00).)  There is no evidence in the record that Plaintiff filed a claim with respect to the supplemental life insurance benefits.

There are exceptions to the exhaustion requirement; exhaustion is not required where the plan fails to comply with its duty to provide participants with notice and review or when exhaustion is futile.  See Brown v. J.B. Hunt Transport Serv., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009).

Plaintiff argues that exhaustion does not apply to an equitable claim for breach of fiduciary duty – which Plaintiff asserts in this case.  See Hitchcock v. Cumberland Univ. 403(b) DC Plan, 851 F.3d 552 (6th Cir. 2017) (holding that exhaustion is not required when plaintiffs seek to enforce statutory ERISA rights rather than contractual rights created by the terms of the plan).

Reliance asserts the Eighth Circuit has not decided whether the exhaustion requirement applies to his breach of fiduciary duty claim.  See Jones v. Aetna Life Insurance Co., 943 F.3d 1167, 1169 (8th Cir. 2019).  In Jones, the court acknowledged that other circuits have held that ERISA does not require exhaustion when plaintiffs are enforcing only statutory rights, rather than rights under the plan.  Id.  The court then held it need not address the issue, however, based on its finding that the plaintiff's claim was a "'plan-based claim artfully

dressed up in statutory clothing' such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." Id.

Because the Eighth Circuit has left open the question of whether exhaustion applies to equitable claims under ERISA, the Court will proceed to determine whether Plaintiff's claim is, in fact, a statutory claim that is not subject to exhaustion. To make this determination, the Court should inquire as to what forms the basis of Plaintiff's rights to relief: the contractual terms of the plan or the provisions of ERISA and its regulations. See Stephens v. Pension Ben. Guar. Corp., 755 F.3d 959, 967 (D.C. Cir. 2014).

Here, Plaintiff is seeking relief pursuant to 29 U.S.C. § 1132(a)(3), which provides that a beneficiary may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or other terms of the plan." Plaintiff alleges that Reliance had a fiduciary duty to maintain appropriate records and properly administer its plan. Plaintiff alleges that as a result of such breach, Reliance accepted premiums for the supplemental life policy and later claimed

such insurance was never approved. The Court thus finds that the exhaustion requirement does not apply to the breach of fiduciary duty claim, as Plaintiff is alleging a violation of a statutory duty[4].

### 2. Life Event

Prior to addressing Plaintiff's claim of breach of fiduciary duty, the Court will address Plaintiff's arguments as to whether coverage is available under the "life event" provision of the Policy. When an employee seeks a change as to the amount of insurance due to a "life event change (such as marriage, birth or specific changes in employment status)" the Policy provides that "proof of good health will not be required provided the insured applies within 31 days of such life event." (Bader Aff., Ex. 8.)

Plaintiff argues that the Policy does not define "life event" and that Reliance never made a determination of whether regaining custody of a minor step-son would constitute a "life event." Davidson's Director of Human Resources, Linda Shirber-Gagnon, recalls that Beth asked if changing custody of her step-son constituted a "Qualified Status Change" and Shirber-Gagnon

---

[4] The Court notes that a claim for benefits under 29 U.S.C. § 1132(a)(1) would be barred in this case, as the record clearly demonstrates that Plaintiff did not file a claim as set forth in the Policy.

14

...

replied that it did.  (Pl. Ex. 12 (Schirber-Gagnon Aff. ¶ 7, Ex. 2 at 5; Ex. 3C (which includes notation under "Reason for Completing Form" "Regain custody of dependent child on 1/28/2014").)

Reliance counters that the Policy does define "life event" as "marriage, birth or specific changes in employment status."  (Bader Aff., Ex. 8 at 3.)  Because Beth did not adopt Plaintiff's son, Reliance argues there was no life event that triggered this provision.  In her supplemental affidavit, Schirber-Gagnon clarified that because Beth did not adopt Plaintiff's son, having the son move into the Skelton's home would not have been a "Qualifying Status Change."  (Doc. No. 172 (Supp. Schirber-Gagnon Aff. ¶ 7).)

Contrary to Plaintiff's arguments, the Court finds that the Policy does define "life event" as a "birth, marriage or specific change in employment status."  Because Beth did not adopt Plaintiff's son, Plaintiff's argument that regaining custody of his son is a "life event" under the Policy has no merit.

### 3. **Breach of Fiduciary Duty**

A claim for breach of fiduciary duty under ERISA has three elements: 1) Reliance acted as a fiduciary; 2) Reliance breached its fiduciary duty; and 3) the breach resulted in harm to Plaintiff.  <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d

585, 594 (8th Cir. 2009). A breach of fiduciary duty may be found where the fiduciary fails to exercise due care to ensure that participants are properly enrolled in the coverages they elect, Lanpher v. Metropolitan Life Ins. Co., 50 F. Supp. 3d 1122 (D. Minn. 2014), or where a fiduciary collects premiums from a participant where there is no valid coverage, Silva v. Metropolitan Life Ins. Co., 762 F.3d 711 (8th Cir. 2014).

Plaintiff claims that Reliance had a fiduciary duty to ensure that its system of administration was such that Reliance would not collect premiums until coverage was actually in force. The EOI instructions and form stated that premiums would not be charged until the EOI was approved by Reliance. Plaintiff argues they reasonably believed Beth was enrolled in the supplemental life insurance plan because they were billed for premiums, and that they reasonably believed they did not need to take any other action to obtain such coverage.

Reliance asserts that Plaintiff is incorrectly lumping Davidson and Reliance together in arguing that Reliance breached its fiduciary duties. Reliance and Davidson had very different roles; Davidson was the fiduciary of the Plan regarding enrollment and collecting premiums, not Reliance. It was Reliance's

responsibility to review proof of good health where required, and it had such a system in place to ensure that only those employees who were approved for coverage were billed for premiums.  On a monthly basis, Reliance provided to Davidson an update report on "Recent Evidence of Insurability Status."  (Hittler Aff., Ex. P.)  The report includes information such whether approval letters were sent, whether excess coverage was declined or whether an application was in medical underwriting for review.  (Id.)  Reliance asserts that through this report, Davidson would then know when to begin sending premium payments to Reliance.  Reliance asserts that Beth Skelton's name never appeared on these reports, therefore Reliance did not bill for those premiums.

What is lacking in the record, however, is whether the amounts mistakenly billed and paid by Beth for supplemental life insurance were forwarded to Reliance.  Reliance admits in its opposition brief that it had no way of knowing whether Davidson forwarded to Reliance any premiums mistakenly billed, and because Davidson was the plan administrator, any billing errors are not Reliance's responsibility.  (Doc. No. 184 at 6.)  This argument, however, ignores Reliance's fiduciary duty to plan participants.

Thus, on the record before it, the Court finds that despite Reliance's attempts to ensure that only those employees approved for coverage would be billed for premiums, it is clear the system was flawed as evidenced by the fact that it resulted in an employee – Beth Skelton – to pay premiums for insurance coverage for which she was never approved. As a fiduciary, the Court finds that Reliance had a duty to ensure its system of administration did not allow it to collect premiums until coverage was actually in force. See Silva, 762 F.3d at 722-24 (recognizing that the acceptance of premiums in some circumstances will support a claim for breach of fiduciary duty); see also Harris v. Life Insurance Company of North America, 419 F. Supp. 3d 1169 (N.D. Cal. 2019) ("To accept these premiums after Mr. Harris's coverage had lapsed was a breach of fiduciary duty because it was tantamount to confirming coverage. As alleged in the complaint, the acceptance of premium payments led the Harrises to believe that Mr. Harris's life insurance policy was still in effect."); Frye v. Metropolitan Life Ins. Co., 3:17-cv-31, 2018 WL 1569485 (E.D. Ark. March 30, 2018) (finding that because the employer/insurer's procedures had a structural administrative defect that allowed employees to pay for coverage for dependents that were either

ineligible or became ineligible, the employer/insurer had breached their fiduciary duties to plaintiff and plaintiff was entitled to relief).

Accordingly, the Court finds that Plaintiff is entitled to summary judgment on his equitable claim under ERISA, as Reliance breached its fiduciary duty to Plaintiff and the Plaintiff was harmed by such breach.

IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 175] is GRANTED. Reliance is hereby ordered to declare Beth Skelton enrolled in the supplement life insurance policy.

2. Within thirty (30) days of the date of this Order, Plaintiff shall submit a brief, no longer than ten pages, and affidavit setting forth the damages due and the reasonable fees and costs incurred in seeking judgment against Reliance. Reliance shall have thirty (30) days to respond in a brief no longer than ten pages.

3. Reliance's Motion for Summary Judgment [Doc. No. 163] is DENIED.

Date:  November 23, 2020          s/ Michael J. Davis
                                  Michael J. Davis
                                  United States District Court